UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- x
                                                      :

ANDREA BRYAN,                            :

                            :

                     Plaintiff,        :            **DECISION AND ORDER**

                            :

                     -against-        :            18-cv-7249 (RRM) (PK)

                            :

COMMACK UNION FREE SCHOOL     :

DISTRICT, DONALD JAMES, and LESLIE   :

BORITZ,                              :

                            :

                     Defendants.

---------------------------------------------------------------- x

**Peggy Kuo, United States Magistrate Judge:**

        Plaintiff Andrea Bryan brought this action against Commack Union Free School District, Donald James, and Leslie Boritz (collectively, the "Current Defendants") alleging racial discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*, and pursuant to Section 1983 of the Civil Rights Act of 1866, 42 U.S.C. § 1983, seeking injunctive and declaratory relief, compensatory damages, punitive damages, attorneys' fees, and other relief. Plaintiff has moved to amend her Complaint for a third time, expanding the factual basis for her discrimination claims, making stylistic changes, adding claims of retaliation in violation of Title VII, Section 1983, and the New York State Human Rights Law, N.Y. Exec. Law § 296 *et seq.*, against the Current Defendants, and adding Charles J. Schulz (collectively with the Current Defendants, "Defendants") as a defendant. (Dkt. 46, the "Motion," Dkt 46-1, Dkt. 46-6.)

        The Honorable Roslynn R. Mauskopf referred the Motion to the undersigned. For the reasons stated below, the Motion is GRANTED in part and DENIED in part.

**FACTUAL AND PROCEDURAL BACKGROUND**

**I.**       <u>Factual Background</u>

        Except where otherwise noted, the following relevant facts are taken from the Second

1

Amended Complaint ("SAC," Dkt. 25) and Plaintiff's Proposed Third Amended Complaint ("PTAC," Dkt. 46-6).[1]

Plaintiff is a Black female of Caribbean descent, who is employed by Defendant Commack Union Free School District as an English teacher at Commack High School.  (SAC ¶¶ 6-7, 10, 13.)  Defendant James is the Superintendent of the District.  (SAC ¶ 8.)  Defendant Boritz is the Principal of Commack High School.  (SAC ¶ 9.)  The SAC alleges that the Current Defendants subjected Plaintiff to racial discrimination.

In the PTAC, Plaintiff alleges that she was also subjected to retaliation for pursuing this lawsuit.  On April 17, 2019, approximately four months after filing her original Complaint (and just over a month after filing her First Amended Complaint, which added Defendants James and Boritz to the case), Charles Schulz, Director of English at Commack High School, issued Plaintiff an "unfounded written reprimand" (the "April Memo," Dkt. 46-3), which was placed in her personnel file.  (PTAC ¶¶ 11, 70, 72.)  Schulz knew about the lawsuit when he issued the April Memo.  (PTAC ¶ 71.)

On September 19, 2019, Schulz placed a second written reprimand (the "September Memo," Dkt. 46-4) in Plaintiff's personnel file, concerning Plaintiff's interaction with student BK.  (PTAC ¶¶ 73-78.)  BK arrived late to Plaintiff's first period class without a late pass, and Plaintiff told BK, in

---

[1] Both parties reference information not mentioned in any versions of the complaint.  While courts generally do not consider matters outside the complaint when evaluating a motion to amend, it may consider documents that are "integral" to the complaint.  *See Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75, 80 (2d Cir. 2018); *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 154 (2d Cir. 2002).  A document is integral if the Plaintiff relied upon it when drafting the complaint.  *Chambers*, 282 F.3d at 153.  Both parties reference the two memos from April and September 2019, along with a rebuttal to the September 2019 Memo, provided as attachments to both Plaintiff's Motion and Defendants' Opposition to the Motion.  (Dkts. 46-3, 46-4, 47-8, 47-9.)  Plaintiff had both memos in her possession and relied upon them when drafting the proposed amendments, and therefore they may be considered in evaluating the Motion because they are integral to the PTAC.  *Chambers*, 282 F.3d at 153.  By contrast, Defendants' citation to deposition testimony (*see* Opposition at 10) refers to information outside of and not integral to the complaint that cannot be considered at this stage.  Similarly, Plaintiff's declaration, is outside of the pleadings and cannot be considered.

front of other students in the class, to obtain a late pass from the main office "in accordance with building protocol." (PTAC ¶ 74.) BK told Plaintiff that late passes were not being issued, but Plaintiff understood that school policy required late passes, she had not been told about any change in that policy, and another student in her class obtained a late pass. (PTAC ¶¶ 74-76.) On September 9, 2019, Plaintiff sent an email to BK's father which "stressed that it was important that BK [] arrive to class on time" and "indicated that Plaintiff had reason to believe that BK was not being truthful when he told her that late passes were not being issued." (PTAC ¶ 75.)

On September 16, 2019, Schulz "summoned" Plaintiff to meet with him, her union representative, and an Assistant Principal. (PTAC ¶ 76.) Schulz told Plaintiff that BK's father had called him, "upset that Plaintiff had questioned whether BK was telling the truth when he told her that late passes were not being issued." (*Id.*) The father also indicated that BK "felt uncomfortable" in class since the incident. (PTAC ¶ 77.) Despite Plaintiff's explanations, Schulz reprimanded Plaintiff for asking BK to obtain a late pass in front of other students and suggested that she should have done so outside the classroom. (*Id.*) The union representative confirmed to Schulz that this course of action would have been against standard procedure because it would have meant leaving the other students unattended. (*Id.*) Schulz nevertheless issued the September Memo, which concludes, "Therefore, you are directed to speak to students privately, either out in the hallway or after class, about sensitive subjects. It is unacceptable to make students negative examples in front of their peers." (September Memo at 2.). The September Memo was placed in Plaintiff's file with the knowledge of Defendants James and Boritz. (PTAC ¶ 77.)

No other teacher at the high school has been reprimanded for similar actions. (PTAC ¶ 78.) Plaintiff alleges that the frequency of the April and September 2019 meetings and the issuance of the April and September Memos are "unprecedented." (*See* the "Rebuttal to September Memo," Dkt. 46-4 at 5.)

## II.      Procedural Background

Plaintiff filed the initial Complaint on December 19, 2018 alleging discrimination by the
School District. (Dkt. 1.)  She amended it on March 4, 2019 ("First Amended Complaint" or "FAC,"
Dkt. 10) to add discrimination claims against Defendants James and Boritz and make other changes
to the allegations, and again on May 10, 2019 to make further changes to the discrimination claims.
(*See* SAC, Dkt. 25.)

A Scheduling Order was entered on July 2, 2019, setting a July 23, 2019 deadline to amend the
complaint or add new parties. (Dkt. 30.)  Although some deadlines in the Scheduling Order were
extended on March 20, 2020 at the parties' request, the parties did not ask to extend the deadline to
amend the Complaint or add new parties. (*See* Dkts. 41, 42.)

On March 8, 2020, Plaintiff requested a pre-motion conference on a motion to amend her
complaint for a third time. (Dkt. 38.)  Judge Mauskopf found that a conference was unnecessary and
allowed briefing on Plaintiff's motion to proceed. (Dkt. Entries Dated May 6 and June 9, 2020.)

On August 14, 2020, Plaintiff filed the Motion.  Defendants filed an opposition (the
"Opposition," Dkt. 47) and Plaintiff filed a reply (the "Reply," Dkt. 48).  Judge Mauskopf referred the
motion to the undersigned.  Oral argument was held on September 11, 2020.  Defendants later filed
a letter with supplemental authority (Dkt. 50), to which Plaintiff replied (Dkt. 51).

## III.     Standard for Granting Leave to Amend the Complaint

### A.      Rule 15

Requests to amend the complaint are generally governed by Rule 15 of the Federal Rules of
Civil Procedure, which provides that once the period to amend as a matter of course has passed, "a
party may amend its pleading only with the opposing party's written consent or the court's leave."
Fed. R. Civ. P. 15(a)(2).  Rule 15 also states that "the court should freely give leave when justice so

requires." *Id.*; *see, e.g., Pinyuk v. CBE Grp., Inc.*, No. 17-cv-5753 (RRM)(CLP), 2019 WL 1900985, at *2 (E.D.N.Y. Apr. 29, 2019) ("Rule 15 expresses a strong presumption in favor of allowing amendment"). Leave to amend may be denied "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *Id.* (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007)).

The determination of whether to grant or deny leave to amend "is within the sound discretion of the district court." *McCarthy* 482 F.3d at 200.

## B.    Rule 16

In cases with a scheduling order where a party seeks to amend after the deadline to amend has passed, Rule 15's liberal pleading standard must be balanced against Rule 16, which states that scheduling orders "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b); *see Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 339 (2d Cir. 2000). A district court may "deny[] leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause." *Parker*, 204 F.3d at 340. "[A] finding of 'good cause' depends on the diligence of the moving party." *Id.* Diligence "is not, however, the only consideration. The district court, in the exercise of its discretion under Rule 16(b), also may consider other relevant factors including, in particular, whether allowing the amendment of the pleading at this stage of the litigation will prejudice defendants." *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007).

Because the scheduling order contains a July 23, 2019 deadline to amend the complaint or add new parties (*see* Dkt. 30), the good cause requirement of Rule 16 applies and must be balanced against the liberal pleading standard of Rule 15.[2]

---

[2] Because the Motion seeks to add a new party, it is also governed by Rule 21, which provides that the court may at any time, on just terms, add or drop a party. "[T]he same standard of liberality applies under" Rule 21 as under Rule 15. *Puchalski v. FM Constr., Inc.*, No. 18-cv-1596 (SJB), 2020 WL 6727777, at *9 (E.D.N.Y. Nov. 16, 2020) (quoting *Duling v. Gristede's Operating Corp.*, 265 F.R.D. 91, 96–97 (S.D.N.Y. 2010)) (quotations omitted, alteration in original).

IV.     **Discussion**

Plaintiff seeks to add a new claim for retaliation under Title VII, Section 1983, and the New

York State Human Rights Law, N.Y. Exec. Law § 296 *et seq.*  (PTAC ¶¶ 1, 11.)  She also includes in

the PTAC some stylistic changes, grammatical corrections, and additional facts related to allegations

of racial discrimination by the Current Defendants.[3]  (*See* PTAC ¶¶ 19-20, 25-32, 34, 38, 39, 42, 45,

49, 50.)  Some of those factual allegations were contained in the original Complaint, but were later

removed by Plaintiff in the First Amended Complaint.  (*Compare* Complaint, FAC, PTAC.)

Defendants argue that Plaintiff's proposed retaliation claims are futile because they are based

on "counseling memos" that cannot, as a matter of law, support a claim of retaliation.  (*See* Opposition

at 7-12.)   Defendants also argue that the motion to amend the existing discrimination claims is

procedurally defective, unduly delayed, and in bad faith.  (*See generally* Opposition.)

A.     **Plaintiff's Retaliation Claims**

1.     *Rule 16 Good Cause*

Good cause exists under Rule 16 for permitting Plaintiff to add retaliation claims after the July

23, 2019 deadline for amendments has passed.  The basis for Plaintiff's retaliation claims did not arise

until September 2019 when the September Memo was placed in her file.  *See Estate of Ratcliffe v. Pradera*

*Realty Co.*, No. 05-cv-10272 (JFK), 2007 WL 3084977, at *4 (S.D.N.Y. Oct. 19, 2007) (good cause

established where parties learned relevant facts after deadline to amend).  Plaintiff did not delay in

seeking to amend her Complaint, requesting consent from Defendants to amend on February 25,

2020, and requesting a pre-motion conference on March 8, 2020.  *See Nycomed U.S. Inc. v. Glenmark*

*Generics Ltd.*, No. 08-cv-5023 (CBA)(RLM), 2010 WL 1257803, at *11 (E.D.N.Y. Mar. 26, 2010) (citing

cases allowing amendment after delays ranging from three months to many years).

---

[3] The PTAC initially added Schulz as a Defendant in the racial discrimination claim, but Plaintiff has since
withdrawn that portion of the proposed amendment.  (Dkt. 52 at 1-2.)

>    2.    *Futility*

A motion to amend may be denied if the proposed amendment is futile. *Parker*, 204 F.3d at

339. A complaint is not futile when it is "sufficient to withstand a motion to dismiss under Rule

12(b)(6)." *Kassner*, 496 F.3d at 244; *see also IBEW Local Union No. 58 Pension Trust Fund & Annuity Fund*

*v. Royal Bank of Scotland Grp., PLC*, 783 F.3d 383, 389 (2d Cir. 2015) ("[T]he standard for denying leave

to amend based on futility is the same as the standard for granting a motion to dismiss.") The Court

must accept all allegations in the proposed amended complaint as true and draw all inferences in

Plaintiff's favor to determine whether it states a claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

To state a retaliation claim under Title VII, Plaintiff must allege "(1) she was engaged in

protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially

adverse action*;* and (4) there was a causal connection between the protected activity and that adverse

action." *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 24 (2d Cir. 2014) (internal quotation,

citation, and brackets omitted) (quoting *Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir.2012)). The

standards under the NYSHRL and Sections 1981 and 1983 are the same. *See Torres v. Pisano*, 116 F.3d

625, 629 n.1 (2d Cir.1997) ("claims brought under New York State's Human Rights Law are

analytically identical to claims brought under Title VII"); *Vega v. Hempstead Union Free Sch. Dist.*, 801

F.3d 72, 91 (2d Cir. 2015) ("… the elements of a retaliation claim based on an equal protection

violation under § 1983 mirror those under Title VII").

Defendants do not contest that filing a complaint alleging discrimination is a protected activity,

*see, e.g.*, *Stern v. State Univ. of New York*, No. 16-cv-5588 (NGG)(LB), 2018 WL 4863588, at *15

(E.D.N.Y. Sept. 30, 2018), or that the employer was aware of that activity.

Rather, the parties only disagree about whether the April and September Memos constitute

materially adverse actions. Plaintiff contends that the letters are "written reprimands," "write ups,"

and "formal rebukes" that courts in this Circuit have found to constitute actionable retaliation (Dkt. 46-1 at 14-15, Reply at 4). Defendants argue in opposition that the letters are "counseling memos" that, as a matter of law, are not adverse actions. (Opposition at 7-12.)

In the context of a retaliation claim, a materially adverse action is one that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *See Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). "Material adversity is to be determined objectively based on the reactions of a reasonable employee." *Rivera*, 743 F.3d at 25 (citing *Burlington Northern*, 548 U.S. at 69-70). Anti-retaliation protections encompass a broader range of conduct than discrimination protections. *See Vega*, 801 F.3d at 90. Retaliatory conduct is "not limited to discriminatory actions that affect the terms and conditions of employment." *Id.* (quoting *Burlington Northern*, 548 U.S. at 64).

Numerous courts have held that a formal letter or "counseling memo" describing a plaintiff's misconduct is a materially adverse action that can give rise to a retaliation claim. *See Millea v. Metro-North R. Co.*, 658 F.3d 154, 165 (2d Cir. 2011) ("A formal reprimand issued by an employer is not a 'petty slight,' 'minor annoyance,' or 'trivial' punishment … even when, as here, the letter does not directly or immediately result in any loss of wages or benefits…"); *St. Juste v. Metro Plus Health Plan*, 8 F. Supp. 3d 287, 326 (E.D.N.Y. 2014) (counseling memo can constitute adverse action for retaliation claim); *Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 227-28 (E.D.N.Y. 2014) (following *Millea* and concluding that counseling memorandum was a materially adverse action); *Sosa v. New York City Dep't of Educ.*, No. 18-cv-411 (PKC)(SJB), 2020 WL 1536348, at *8 (E.D.N.Y. Mar. 31, 2020) (disciplinary letter placed in file constitutes retaliatory action both in isolation and in context of defendant's other actions); *Oliver v. New York State Police*, No. 15-cv-00444 (BKS)(DJS), 2020 WL 1989180, at *39 (N.D.N.Y. Apr. 27, 2020) (counseling memo that admonished Plaintiff may constitute adverse action in retaliation context); *Mazyck v. Metropolitan Tarnsp. Auth.*, 893 F. Supp. 2d 574, 585,

591-92 (S.D.N.Y. 2012) (holding that "Letter of Instruction" for tardiness constitutes conduct that "affected the terms, privileges, duration or conditions of employment").

Taking all the allegations in the PTAC as true and drawing all inferences in Plaintiff's favor, the April and September Memos can constitute materially adverse actions.  Plaintiff alleges that the Memos lacked merit because they rebuked her for acting consistently with school policy.  (PTAC ¶¶ 74-79; September Memo at 4-6; Reply at 4.)  While Schulz suggested that Plaintiff should have stepped out of class to discipline BK away from his peers, Plaintiff alleges that according to the union representative, Schulz's proposed course of action would not have been consistent with protocol. (PTAC ¶ 77; Rebuttal to the September Memo at 5.)  Plaintiff thus was reprimanded for following what she and her union representative understood to be the rule regarding late passes and was formally instructed to do something in violation of the rule.

Plaintiff also alleges she is the only teacher to have been rebuked for asking a student for a late pass or not speaking to a student in private about failing to obtain a late pass.  (PTAC ¶ 78; September Memo at 4.)  It is a plausible inference that Schulz issued the September Memo because of Plaintiff's protected activity rather than school policy, because the policy was generally not enforced. *See, e.g.*, *Mazyck*, 893 F. Supp. 2d at 587, 591-94 (under more stringent 'terms and conditions of employment' standard, selective issuance of written reprimands can constitute adverse action).

While the letters did not result in or threaten a change in her employment conditions, a reasonable employee in Plaintiff's situation could conclude, based on the letters and the circumstances surrounding them, that Defendants were acting in retaliation for her filing and litigating the Complaint, which could dissuade such an employee from enforcing her rights under employee protection statutes. *See Millea*, 658 F.3d at 165.

Defendants rely on *Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556 (2d Cir. 2011) for the proposition that counseling cannot form the basis of a retaliation claim.  However, unlike here, in

*Tepperwien* the counseling was rescinded and other employees were similarly counseled. *See id.* at 570; *see also St. Juste*, 8 F. Supp. 3d at 326 (distinguishing *Tepperwien* on the same grounds and holding that an un-rescinded counseling memo could constitute adverse action for retaliation purposes). Several of the other cases cited by Defendants in which counseling memos were held not to constitute adverse actions arose in the context of discrimination claims, not retaliation. *See Worrell v. New York City Dep't of Educ.*, 140 F. Supp. 3d 231, 239 (E.D.N.Y. 2015), *Hussey v. New York State Dep't of Law/Office of Atty. Gen.*, 933 F. Supp. 2d 399, 406 (E.D.N.Y. 2013); *Weinstein v. Garden City Union Free Sch. Dist.*, No. 11-cv-2509 (AKT), 2013 WL 5507153, at *24 (E.D.N.Y. Sept. 30, 2013). Indeed, multiple courts in the Second Circuit have specifically held that, while counseling memos cannot form the basis for discrimination claims, they can support retaliation claims. *See, e.g.*, *Oliver*, 2020 WL 1989180 at *33, 39; *Siddiqi v. New York City Health & Hosps. Corp.*, 572 F. Supp. 2d 353, 367-68, 372 (S.D.N.Y. 2008). While some cases in this Circuit have suggested that counseling memos cannot form the basis of retaliation claims, those decisions appear to be against the weight of opinion in this Circuit. *See, e.g.*, *Pothen v. Stony Brook Univ.*, No. 13-cv-6170 (JFB)(AYS), 2018 WL 4635729, at *9, 11-12 (E.D.N.Y. July 6, 2018) (counseling memo cannot constitute retaliation); *McPherson v. City of New York*, No. 09-cv-4682 (BSJ)(THK), 2011 WL 4431163, at *7 (S.D.N.Y. Sept. 23, 2011) (same); *Weinstein*, 2013 WL 5507153, at *24 (noting same in context of complaint that did not include retaliation claims).

Because Rule 16 does not weigh against allowing amendment, and because Plaintiff's PTAC states a plausible retaliation claim and is therefore not futile, Plaintiff is granted leave to amend the SAC to add her retaliation claims against all Defendants.

## B.   Plaintiff's Proposed Amendments to the Race Discrimination Claims

Plaintiff seeks to amend her Complaint to plead additional facts in support of her race discrimination allegations against the Current Defendants. Plaintiff argues that under the liberal pleading standard of Rule 15, there is no prejudice to Defendants nor any other basis to deny her

proposed amendments. (Dkt. 46-1 at 16-17.) Defendants argue that Plaintiff has failed to show good cause under Rule 16 for seeking these amendments after the deadline for amending the complaint has passed, that she acted in bad faith and with undue delay, and that she violated Judge Mauskopf's individual rules. (Opposition at 13-20.)

> 1.    *Lack of Good Cause Under Rule 16*

Because Plaintiff requested the pre-motion conference to amend her Complaint more than seven months after the deadline for amending the complaint, Plaintiff bore the burden to establish good cause to permit amendment. *See Parker*, 204 F.3d at 339–41. Plaintiff fails to address the good cause standard required by Rule 16 and raised by Defendants. (*Cf.* Reply at 8-10.) Plaintiff argues that most of her proposed changes to the discrimination claims of the PTAC "merely amplify Plaintiff's *existing* allegations," "merely elaborate and develop allegations contained in the original Complaint, FAC and SAC," and "merely particularize[]" Defendants' culpable conduct. (Reply at 8, 10) (emphasis in original). However, except for the additions to paragraph 38, which reference public events that occurred in June 2020 not directly relevant to the claims here, all the other factual allegations were alleged to have occurred prior to the deadline to amend. Indeed, many of the allegations, as Defendants point out, were already contained in the original Complaint, indicating the Plaintiff was aware of them.

To the extent that Plaintiff claims to have learned additional information after she removed certain factual allegations from the FAC, she does not state exactly when such new information came to light. For example, Plaintiff alleged in the original Complaint that she was denied an opportunity to complete her certification to teach in the "IB Program," but removed those alleged facts when she filed the FAC on March 4, 2019. She now seeks to reinsert them through the PTAC. (*Compare* Compl. ¶¶ 21-22; FAC; PTAC ¶¶ 19-20, 25, 30, 31.) While Plaintiff suggests in her Reply that she obtained documents in discovery indicating that "Plaintiff had, in fact, *completed* the certification, but

nevertheless was not *selected* to teach IB" (Reply at 10 (emphasis in original)), she does not indicate when she learned these additional facts and how they "altered the facts as originally understood by her." (Reply at 10.) Given her failure to show diligence, Plaintiff has not shown good cause to amend her discrimination claims.

### 2. *Bad Faith and Prejudice*

In addition, denial of Plaintiff's request to amend her discrimination claims under Rule 15 is justified because Plaintiff has shown bad faith in seeking to amend the complaint without disclosing what she was adding, and Defendants would be prejudiced if leave to amend were granted. *See State Trading Corp. of India, Ltd. v. Assuranceforeningen Skuld*, 921 F.2d 409, 417-18 (2d Cir. 1990). Plaintiff did not mention that she was seeking substantive or stylistic revisions to her existing discrimination allegations until her Reply, representing in her pre-motion conference letter and her Memorandum in Support of the Motion only that she was seeking to add a retaliation claim. (*See* Dkts. 38, 46.) She did not submit a comparison between the SAC and PTAC showing what was being added, changed or re-inserted, which would have made clear that her proposed amendments went far beyond what she stated she was requesting. Plaintiff's failures raise questions about her candor with opposing counsel and the Court.

Furthermore, Defendants would be prejudiced if leave to amend were granted. Plaintiff has already been deposed. Although Plaintiff asserts in her Reply that the newly added—or re-added— allegations were discussed during her deposition, Defendants point out that those topics might have been subjected to additional scrutiny had Defendants known that, after removing them from the original Complaint, Plaintiff intended to reassert them. (*Compare* Reply at 9-10 *with* Opposition at 18.) *See In re Gen. Elec. Co. Sec. Litig.*, No. 09-cv-1951 (DLC), 2012 WL 2892376, at *4 (S.D.N.Y. July 12, 2012) (considering additional discovery burden when evaluating motion to amend).

Denying Plaintiff leave to amend to add "additional context and detail surrounding her

existing" claims causes her no practical harm, because to the extent the factual record has already been developed, she may include such context and detail for purposes of summary judgment or at trial. *See Berlin v. Jetblue Airways Corporation*, 436 F. Supp. 3d 550, 574 (E.D.N.Y. 2020) (*citing Schmidt v. Stone*, No. 14-cv-2519, 2018 WL 4522082, at *12 (E.D.N.Y. Jan. 29, 2018) ("To allow amendment simply to amplify facts alleged in the First Amended Complaint ... is unnecessary and needlessly would require the defendant to expend time and resources ...").

Accordingly, leave to amend to include additional factual allegations and to make stylistic changes to the discrimination claims is denied.[4]

## V.    Conclusion

For the foregoing reasons, the Motion is GRANTED as to the retaliation claims as set forth in paragraphs 68-79 and 91-98, but DENIED as to all other proposed amendments.

**SO ORDERED:**

*Peggy Kuo*

PEGGY KUO
United States Magistrate Judge

Dated:    Brooklyn, New York
          February 18, 2021

---

[4] In light of this ruling, the Court does not separately consider Defendant's argument that Plaintiff violated Judge Mauskopf's Individual Rule III.A.2 by failing to include reference to the proposed amendments to the discrimination claims in her "brief description of the grounds for" a proposed motion to amend. (Opposition at 13-14.)