UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
ANDREA BRYAN,

      Plaintiff,

 -against-

COMMACK UNION FREE SCHOOL DISTRICT,
DONALD JAMES, LESLIE BORITZ and
CHARLES J. SCHULZ,

      Defendant.
---------------------------------------------------------------X

**THIRD AMENDED COMPLAINT**

*Jury Trial Demanded*

  Plaintiff, ANDREA BRYAN, by and through her attorneys, the Law Office of Peter A. Romero PLLC, complaining of the Defendants, alleges as follows:

## NATURE OF THE ACTION

  1. This case is brought for a money judgment for punitive, compensatory and emotional damages suffered by Andrea Bryan ("Plaintiff") as a result of racial discrimination in employment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII").  This action seeks redress pursuant to Section 1983 of the Civil Rights Act of 1866, 42 U.S.C. § 1983 ("Section 1983") for the deprivation of Plaintiff's civil rights and for Defendant's violation of the substantive rights afforded Plaintiff under 42 U.S.C. § 1981 ("Section 1981").

  2. Plaintiff seeks injunctive and declaratory relief, compensatory damages, punitive damages, attorneys' fees and other appropriate relief.

## JURISDICTION AND VENUE

  3. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331.

1

4. Venue is proper within this judicial district because Defendant resides within the Eastern District of New York and a substantial part of the events or omissions giving rise to the claim occurred within this district.

5. Plaintiff filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") under Charge Number 520-2017-04828. The EEOC issued a notice of dismissal and Right to Sue, dated September 21, 2018. Plaintiff commenced this action within ninety days of September 21, 2018.

## THE PARTIES

6. Plaintiff is a black female of Caribbean descent.

7. Defendant, COMMACK UNION FREE SCHOOL DISTRICT ("Defendant" or "the District"), is an employer as defined by Title VII.

8. Defendant, DONALD JAMES, was and is the Superintendent of the District.

9. Defendants, LESLIE BORITZ, was and is the Principal of Commack High School.

10. Defendant, CHARLES J. SCHULZ, was and is the Director of English at Commack High School.

## FACTUAL ALLEGATIONS

11. Defendant is a school district located in Suffolk County, New York consisting of four primary schools, two intermediate schools, one middle school and one high school. It serves approximately 7,800 students.

12. Plaintiff is certified by New York State as an English Teacher and has over fifteen years of classroom experience. She earned a Bachelor of Arts in English and her Master of Arts in Secondary English Education from the State University of New York at Albany.

13. Prior to being employed with Defendant, Plaintiff was employed as a full-time tenured English teacher within the Nanuet Union Free School District at the middle and high school levels from 1996 to 2002.

14. From 2002 through present, Plaintiff has been employed with Defendant as a tenured Secondary English Teacher at the high school level.

15. For some 17 years, Plaintiff was the only black teacher in the entire school district.

16. Plaintiff has been subject to conduct that created a work environment that a reasonable person would find hostile or abusive, and that Plaintiff subjectively perceived as hostile or abusive, because of her color and race.

17. Plaintiff has been discriminated against and harassed by teachers and students based on her race since she made a complaint about the English Department Lead Teacher after he made a particularly vile and opprobrious remark that caused her severe embarrassment and humiliation.

18. The Lead Teacher, Phillip Cicione, who is white, had previously made racially derogatory comments to Plaintiff.  For example, during the prior school year, there were bags of peanuts on the table in the English office at lunch time.  Plaintiff asked Cicione if she could take a bag of peanuts and he replied that the food on the table was "*for whites only*."  Plaintiff reported Cicione's remark to his supervisor.

19. The English curriculum included Arthur Miller's play, *The Crucible*, which featured the character of Tituba, an enslaved black woman who traveled to the U.S. from Barbados.  In May 2015, Cicione mocked Plaintiff in the presence of her colleagues by asking her to translate Tituba's "*slave talk*." Cicione asked Plaintiff, "*Andrea, can you translate slave talk for me*?"  He specifically asked Plaintiff to "speak" her Barbados. Plaintiff was humiliated, degraded and embarrassed by Cicione's remark.

20. Plaintiff's colleagues laughed and encouraged Cicione's remark and jeered, "*Oh, come on, Andrea!*" and "*Do it! Do it!*"

21. Plaintiff complained about Cicione's harassment to Superintendent James.

22. Despite being informed of the racial discrimination, Defendant James failed to require teachers to attend harassment and discrimination training.

23. Despite being informed of the racial discrimination, Defendant James failed to establish protocols for receiving, investigating and acting upon complaints of discrimination.

24. Cicione, who is very popular among the other teachers in the English Department, was demoted. Thereafter, Plaintiff was ostracized and made a pariah within the Department.

25. By way of example only, when Plaintiff raised her hand to ask a question at a professional development training in 2015, the teacher leading the training, Dana McNeil, refused to acknowledge Plaintiff's question. As Plaintiff was leaving the training, she heard teachers congratulating McNeill for having the "*balls*" not to speak to her.

26. In September 2017, a racially disparaging poster depicting a Caribbean black male with dreadlocks was posted in the English office.

27. Plaintiff complained about the offensive poster to Principal Boritz. Despite being informed of the racially disparaging poster, Defendant Boritz demonstrated indifference by failing to require teachers to attend harassment and discrimination or racial sensitivity training.

28. The District has fostered an atmosphere of racial harassment and intimidation by exhibiting a deliberate indifference to the known harassment of Plaintiff. She has been subject to insult and ridicule.

29. In October 2009, one of Plaintiff's students came to school in "*blackface*" dressed as "*Aunt Jemima*."

4

30. Historically, blackface was used by white performers in minstrel shows that mockingly portrayed blacks in a dehumanizing manner.[1] It is a symbol of Jim Crow racism.

31. The Aunt Jemima Pancake Syrup logo depicts a "mammy," a racial caricature of "a devoted and submissive plantation slave who eagerly nurtured the children the children of her white master and mistress" that was offered as proof that black women were happy as slaves.[2]

32. Despite being informed of the racial harassment, the District failed to implement curriculum changes to ensure that a culture of racial tolerance would be encouraged at Commack High School.

33. In Spring 2016, one of Plaintiff's students asked Plaintiff, "*Do you remember Aunt Jemima?*" The following week the student shouted at Plaintiff in the cafeteria, "*Aunt Jemima!*" Plaintiff reported the incident to Dean Courtney Palazzo and Defendant Boritz and asked that the student be removed from her class.

34. Defendant Boritz demonstrated indifference by failing to discipline the student, denying Plaintiff's request and permitting the student to remain in Plaintiff's class. For the remainder of the year, the student sneered at Plaintiff daily and exhibited disdain for her.

---

[1] From The New York Times, Blackface Is the Tip of the Iceberg-The structural problems we need to solve lie at the roots of American society.

https://www.nytimes.com/2019/02/04/opinion/northam-blackface-racism.html:

"The most popular form of entertainment in 19th-century America, which continued well into the 20th, blackface minstrelsy was defined by its caricature of and gross hostility toward black Americans. In the minstrel show, blacks — and free blacks in particular — were objects of ridicule, lampooned for seeking equality and respectability. Beyond simple mockery, the pleasure of blackface for white performers and their audiences lay in the vicarious experience of an imagined blackness — a wild, preindustrial "savage" nature that whites attributed to black Americans."

[2] https://www.nytimes.com/roomfordebate/2015/06/24/besides-the-confederate-flag-what-other-symbols-should-go/can-we-please-finally-get-rid-of-aunt-jemima

35. Despite being informed of the racial harassment, Defendant Boritz failed to deliver a message to students concerning racial tolerance, failed to educate the student body regarding the dangers of racial harassment and failed to remedy the discrimination.

36. On June 8, 2017, students mocked and taunted Plaintiff by exclaiming, "*Hey, look, it's Aunt Jemima*!" Plaintiff was greatly humiliated, embarrassed and degraded by the laughing students. Later that day, as Plaintiff was walking in the hallway, a student yelled, "*There goes Aunt Jemima*!" Plaintiff reported both incidents to Principal Boritz.

37. Defendant Boritz demonstrated indifference by failing to identify and discipline the students that harassed Plaintiff on June 8, 2017.

38. Despite being informed of the racial harassment that occurred on June 8, 2017, Defendant Boritz demonstrated indifference by failing to educate students about the dangers of racial harassment, failed to implement curriculum changes designed to promote racial tolerance, and failed to remedy the discrimination.

39. Despite being informed of the racial harassment that occurred on June 8, 2017, Defendant Boritz failed to establish procedures for receiving, investigating and acting upon complaints of discrimination.

40. On Friday, October 18, 2017, students mocked Plaintiff asking, "*Do you have any maple syrup?*" The taunting question harkened back to the pejorative "*Aunt Jemima*." Plaintiff was humiliated, embarrassed and degraded by the students. Plaintiff left work after the incident and did not return to work until Tuesday because she feared for her safety.

41. Plaintiff reported the October 18, 2017 incident to Principal Boritz. Despite being informed of the racial harassment, Defendant Boritz demonstrated indifference by failing to discipline the student(s) responsible for instigating the racial harassment.

42. Despite being informed of the racial harassment, Defendant Boritz demonstrated indifference by failing to educate students regarding the dangers of racial harassment, failing to implement curriculum changes designed to promote racial tolerance and failing to remedy the discrimination.

43. Plaintiff also reported the June 8, 2017 and October 18, 2017 incidents to Defendant James. Despite being informed of the incidents of racial harassment, Defendant James demonstrated indifference by failing to discipline the students responsible for instigating the racial harassment, failing to educate students regarding the dangers of racial harassment, failing to implement curriculum changes designed to promote racial tolerance and failing to remedy the discrimination.

44. The racial jeers, insults, and taunts described herein created a hostile work environment in which Plaintiff feared for her safety at work. The harassment of Plaintiff was so distracting that it interfered with Plaintiff's ability to work and made it more difficult for her to perform her job.

45. Defendants Bortiz and James failed to undertake any meaningful investigatory, disciplinary, preventative, remedial or corrective measures in response to the pattern of racial harassment of Plaintiff, despite the ability and authority to do so on behalf of the School District.

46. Principal Boritz, as principal of Commack High School, was the highest ranking person in the school. By virtue of her position, she was directly responsible for discipline in her school and supervision over teachers and students. Principal Boritz had final policymaking authority for the School District with respect to the day-to-day enforcement of equal opportunity and anti-harassment policies at Commack High School, including the responsibility to redress

complaints of discrimination and harassment, discipline perpetrators, and forward complaints to appropriately designated individuals in the School District.

47. Upon information and belief, Superintendent James is responsible for promoting a safe and orderly school environment and for reviewing with district administrators the policies of the Board of Education and state and federal laws relating to school operations and management. Upon information and belief, Superintendent James has authority to work with district administrators in assuring that all claims of harassment are resolved promptly and fairly, to create instructional programs that decrease instances of racial harassment, to take corrective action on behalf of the School District to stop the harassment of Plaintiff, and to discipline the perpetrators of such harassment.

48. Upon information and belief, neither the School District nor any of the School District's officials, policymakers, administrators, or other employees provided appropriate training to administrators, faculty, or staff with respect to discrimination and harassment based on race.

49. Defendants Boritz and James failed to take any action with respect to Plaintiff's complaints of racial harassment.

50. Defendants Boritz and James failed to educate the entire student body about the dangers of racial harassment.

51. Defendants Boritz and James failed to take remedial measures in order to specifically ensure that Plaintiff's work environment was free from racial harassment.

52. Upon information and belief, neither Boritz nor James delivered a message to the faculty or to the student body regarding racial discrimination.

53. Upon information and belief, neither Boritz nor James directed Social Studies teachers to instruct students about the historical significance of blackface and other symbols of Jim Crow racism in response to the racial harassment of Plaintiff.

54. Upon information and belief, neither Boritz nor James implemented curriculum changes to ensure that a culture of racial tolerance would be encouraged at Commack High School.

55. Upon information and belief, neither Boritz nor James met with the parents of students to discuss racial harassment or racial discrimination at Commack High School.

56. Upon information and belief, Boritz and James did nothing to address the harassment of Plaintiff or to discipline the students that harassed her.

57. Defendants' response to the harassment was not reasonably calculated to end the harassment of Plaintiff and, therefore, was inadequate.

58. Boritz and James are charged with prescribing and controlling conduct in Commack High School, thus the District had disciplinary oversight over the harassers. Hence, the District had substantial control over the harassment of Plaintiff.

59. The lack of action by Boritz and James to educate students about the harm of racial harassment and to discipline the Plaintiff's harassers was an inadequate response and thus, clearly unreasonable.

60. The actions of Boritz and James could not have reasonably been expected to remedy the discrimination. Therefore, the District is liable for what amounts to an official decision not to end discrimination.

## CONTINUED HARASSMENT AND RETALIATION

61. From the inception of Plaintiff's employment with the District, Plaintiff has consistently received stellar evaluations based on classroom observations and has been commended in writing for demonstrating excellent classroom management skills and the manner in which she handles challenges with students.

62. Plaintiff's most recent observation was conducted January 7, 2020 by Assistant Principal Matthew Keltos, who rated Plaintiff "*Highly Effective*." Plaintiff received the highest possible rating in all aspects of effective teaching, including, but not limited to, "*There are obvious signs of classroom respect and rapport*," "*Teacher communicated expectations appropriately*," and "*Teacher was flexible to student needs*." Plaintiff was also rated "*Highly Effective*" in classroom observations conducted in November 2016, January 2017, and April 2018.

63. On December 19, 2018, Plaintiff commenced this lawsuit against the District alleging discrimination in employment based on race. On March 4, 2019, Plaintiff amended her Complaint to include Superintendent James and Principal Boritz as individual defendants to the action. On May 10, 2019, Plaintiff amended her Complaint again to amplify her allegations against Defendant James and Defendant Bortiz.

64. Defendant Schulz has been aware of Plaintiff's lawsuit because he has attended meetings between Plaintiff and Principal Boritz at which the lawsuit was discussed. In addition, upon information and belief, Defendant Schulz has been asked to search for documents responsive to Plaintiff's requests for discovery in this litigation.

65. On April 17, 2019, Defendant Schulz issued Plaintiff an unfounded written reprimand that was placed in Plaintiff's personnel file in retaliation for prosecuting claims of racial discrimination against the District, Superintendent James and Principal Boritz.

10

66. On September 19, 2019, Defendant Schulz issued Plaintiff a second improper written reprimand that was placed in Plaintiff's personnel file in retaliation for prosecuting claims of racial discrimination against the District, Superintendent James and Principal Boritz.

67. Defendant Schulz reprimanded Plaintiff for an incident in which a student ("BK") arrived late to her first period class without a late pass. Plaintiff asked BK to obtain a late pass from the main office in accordance with building protocol for students arriving last to first period. BK told Plaintiff that late passes were not being issued. Plaintiff had received no notification from the Administration that late passes were not being issued. In addition, Plaintiff had asked another student, who had also arrived late to her first period class, to obtain a late pass and she did.

68. On September 9, 2019, Plaintiff sent an email to BK's father. The email to BK's father stressed that it was important that BK to arrive to class on time. The email also indicated that Plaintiff had reason to believe that BK was not being truthful when he told her that late passes were not being issued. The basis for Plaintiff's belief was the fact that she had received no notification from Administration that late passes were not being issued and the other student whom she had asked to obtain a late pass returned to class with a late pass. Plaintiff wrote in her email to BK's father that she "wanted to reach out…as a way to support (BK) in getting to class on time."

69. On September 16, 2019, Defendant Schulz summoned Plaintiff to meet with him, Assistant Principal Keltos and Union Representative Bart Ayers. Defendant Schulz informed Plaintiff that he had received a phone call from BK's father, who indicated that he was upset that Plaintiff had questioned whether BK was telling the truth when he told her that late passes were not being issued. In the meeting, Plaintiff explained to Defendant Schulz the basis for her belief that BK was not being truthful, including the fact that (1) she had received no notification from

11

Administration that late passes were not being issued and (2) the other student whom she had asked to obtain a late pass returned to class with a late pass.

70. Defendant Schulz also informed Plaintiff that BK had expressed to his father that he felt uncomfortable in class since the incident involving the late pass. During the disciplinary meeting, Defendant Schulz reprimanded Plaintiff for having asked BK to obtain a late pass in the presence of other students, despite the fact Plaintiff had acted in according to standard classroom procedure. Defendant Schulz suggested that Plaintiff should have pulled BK out of class to ask him to obtain a late pass, which would have been contrary to standard procedure. The Union Representative confirmed to Defendant Schulz that Plaintiff had followed protocol. Stepping out of the classroom to request a late pass would have required Plaintiff to leave her other students unattended. Moreover, it would require Plaintiff to leave the classroom every time a student arrived late to class and cause interruptions to her class. Nevertheless, Defendant Schulz issued a written reprimand to Plaintiff, without valid justification, that was placed in her personnel file with the knowledge of Defendant James and Defendant Boritz. Thus, Plaintiff was disciplined for correctly following and applying Defendants' procedures and, as a result, Defendants violated their own procedures in issuing the retaliatory reprimand.

71. Upon information and belief, no other teacher at the high school has been issued a written reprimand for asking a student to obtain a late pass, or for not speaking to a student in private when asking for a late pass. Plaintiff has been disciplined merely because she engaged in protected activity by bringing this lawsuit against the Defendants.

72. As a result of the retaliatory write-ups, Plaintiff has been in constant fear of further reprisal, which has interfered with her ability to work and made it more difficult for her to perform her job.

### FIRST CLAIM FOR RELIEF AGAINST THE DISTRICT
### TITLE VII RACE DISCRIMINATION

73. Plaintiff repeats and realleges each and every allegation contained herein.

74. Plaintiff has been discriminated against by Defendant on the basis of her race in violation of Title VII.

75. The harassment of Plaintiff was so distracting that it interfered with Plaintiff's ability to work and made it more difficult for her to perform her job.

76. The harassment to which Plaintiff was subjected was such that a reasonable employee would find the conditions of her employment altered for the worse.

77. As a proximate result of the racial discrimination, Plaintiff has suffered and continues to suffer mental and emotional distress, pain and suffering, embarrassment and humiliation and mental anguish.

### SECOND CLAIM FOR RELIEF AGAINST THE DISTRICT,
### DEFENDANT JAMES AND DEFENDANT BORITZ
### SECTION 1983 RACE DISCRIMINATION

78. Plaintiff repeats and realleges each and every allegation contained herein.

79. Plaintiff has been subject to harassment and discrimination because of her race in violation of the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States and in violation of Section 1981 of the Civil Rights Act of 1866.

80. Defendants, after being informed of racial harassment, failed to remedy the harassment and allowed racial harassment to continue.

81. Defendants exhibited deliberate indifference to Plaintiff's complaints of racial harassment and discrimination.

82. Defendant's failure to take appropriate remedial action contributed to a hostile work environment.

83. As a proximate result of the racial discrimination, Plaintiff has suffered and continues to suffer mental and emotional distress, pain and suffering, embarrassment and humiliation and mental anguish.

## THIRD CLAIM FOR RELIEF AGAINST THE DISTRICT
## TITLE VII RETALIATION

84. Plaintiff repeats and realleges each and every allegation contained herein.

85. Defendant retaliated against Plaintiff for opposing racial discrimination in violation of Title VII.

86. Defendant's retaliation against Plaintiff was so distracting that it interfered with Plaintiff's ability to work and made it more difficult for her to perform her job.

87. The harassment to which Plaintiff was subjected was such that a reasonable employee would find the conditions of her employment altered for the worse.

88. As a proximate result of Defendant's retaliatory conduct, Plaintiff has suffered and continues to suffer mental and emotional distress, pain and suffering, embarrassment and humiliation and mental anguish.

## FOURTH CLAIM FOR RELIEF AGAINST THE DISTRICT,
## DEFENDANT JAMES, DEFENDANT BORITZ and DEFENDANT SCHULZ
## SECTION 1983 RETALIATION

89. Plaintiff repeats and realleges each and every allegation contained herein.

90. Plaintiff has been subject to harassment and retaliation because she opposed racial discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States and in violation of Section 1981 of the Civil Rights Act of 1866.

91. As a proximate result of the harassment and retaliation, Plaintiff has suffered and continues to suffer mental and emotional distress, pain and suffering, embarrassment and humiliation and mental anguish.

### FIFTH CLAIM FOR RELIEF AGAINST THE DISTRICT, DEFENDANT JAMES, DEFENDANT BORITZ and DEFENDANT SCHULZ RETALIATION IN VIOLATION OF THE EXECUTIVE LAW

92. Plaintiff realleges and incorporates by reference the preceding allegations as if fully set forth herein.

93. By the acts and practices described above, the Defendants retaliated against Plaintiff for opposing racial discrimination in violation of the Executive Law.

94. As a result of Defendants' discriminatory conduct, Plaintiff has suffered loss of income and benefits, loss of opportunity for advancement and promotion, emotional pain and suffering, mental anguish, embarrassment and humiliation.

95. Defendants are liable to Plaintiff for compensatory damages, punitive damages, reasonable attorney's fees and the costs incurred in this action.

### DEMAND FOR JURY TRIAL

96. Plaintiff demands a trial by jury.

**WHEREFORE**, Plaintiff demands judgment against Defendant and that the Court enter an award in favor of Plaintiff:

(i) Declaring the acts and practices complained of herein are in violation of the Civil Rights Act;

(ii) Compensatory damages for emotional pain and suffering, mental anguish, embarrassment and humiliation;

(iii) Punitive damages;

(iv) Attorneys' fees, costs and disbursements; and

(v) Such other and further relief as this Court may deem just and proper.

Dated: Hauppauge, New York
      March 10, 2021

                        LAW OFFICE OF PETER A. ROMERO PLLC

            By:   */s/ **Peter A. Romero***
                    Peter A. Romero, Esq.
                    825 Veterans Highway Ste. B
                    Hauppauge, New York 11788
                    Tel. (631) 257-5588
                    PRomero@RomeroLawNY.com

                    *Attorneys for Plaintiff*